**Richard KOCHENDORFER, Plaintiff,**

v.

**ROCKDALE SASH AND TRIM COMPANY, INC. PROFIT SHARING PLAN, Defendant.**

**No. 86 C 1783.**

United States District Court, N.D. Illinois, E.D.

Jan. 23, 1987.

 

Mark S. Stein, Mark S. Schaffner, Potter, Schaffner & Stein, Chicago, Ill., for plaintiff.

Nancy G. Ross, Wilbur H. Boies McDermott, Will & Emery, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

### Background

Plaintiff Richard Kochendorfer is a former employee of Rockdale Sash & Trim Company ("Rockdale"). Kochendorfer was hired by Rockdale on or about January 5, 1979, and was discharged by Rockdale, other than for cause, on or about February 23, 1983. At the start of the first fiscal year after he was hired, on April 1, 1979, Kochendorfer became a participant in the Rockdale Sash and Trim Company, Inc. Profit Sharing Plan (the "Plan"). His profit sharing account was credited by Rockdale for the years ending March 31, 1980, 1981 and 1982. Kochendorfer left Rockdale before profit sharing contributions were made on March 31, 1983.

When he separated from Rockdale, Kochendorfer was informed by the trustees of the Plan that he was entitled to receive 30% of the amount in his account ($3,153.53), that being the percentage that was vested. Kochendorfer claims he was entitled to receive 100% of the amount in his profit sharing account (approximately $10,511.00).

It is undisputed that under the Plan description (as that term is used in § 102(a)(2) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1022(a)(2)), Kochendorfer was entitled to receive only the vested portion of his profit sharing account. Section 6.1 of the Plan description provided that, in the event of the employee's retirement or death, "the balance in his account ... shall be nonforfeitable and shall be distributable to him, or in the event of his death to his beneficiary." Since Kochendorfer did not retire or die, but was discharged, section 6.2 rather than section 6.1 controlled. Section 6.2 provided "[i]f a

participant resigns or is dismissed from the employ of all the employers before retirement ... the balance in his account ... will be reduced to an amount equal to 10 percent thereof for each 12 months of participation in the plan (not exceeding 100 percent)." The trustees applied section 6.2 and reduced Kochendorfer's profit sharing account to 30 percent of its former balance and tendered that amount to him.

Kochendorfer claims that the terms of a booklet provided to him by the Plan entitles him to receive the full amount in his profit sharing account. This booklet, which the Plan calls a "record-keeping booklet" expressly states "Your share is paid out in full if permanently disabled; at the age of retirement; *for discharge for other than 'cause,'* or in the event of death" (emphasis added). The Plan does not dispute the existence of the booklet, nor that the statements contained therein are directly contrary to the terms of the Plan description. Thus, this case boils down to the question, which document controls—the official Plan description or the booklet given to Kochendorfer?

### Discussion

The defendant Plan filed a motion to dismiss, and attaches affidavits, exhibits and deposition excerpts to bolster its position. Kochendorfer responds by submitting exhibits and deposition excerpts in opposition to the Plan's motion. Pursuant to Fed.R.Civ.P. Rule 12(b), we elect to consider these matters outside the pleadings, and treat the motion to dismiss for failure to state a claim as one for summary judgment under Rule 56. Hence, the issue before us is whether there is a genuine issue as to any material fact or whether we can award judgment as a matter of law.

Defendant's first argument is that this court lacks subject matter jurisdiction over the case. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), the statutory provision upon which federal jurisdiction is based, states "[a] civil action may be brought—(1) by a participant or beneficiary —(B) to recover benefits due to him under

the terms of his plan to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Plan's position is that Kochendorfer seeks benefits not "under the terms of his plan" but under the record-keeping booklet. Hence, section 1132(a)(1)(B) would not apply, and the suit is one for simple breach of contract actionable in state court.

While this position is not without support, *see O'Brien v. Sperry Univac,* 458 F.Supp. 1179 (D.D.C.1978) and *Newman v. Eli Witt Co.,* 20 B.R. 778 (Bankr.M. D.Fla.1982), we reject this argument and conclude that we do have subject matter jurisdiction. In *Gors v. Venoy Palmer Market, Inc.,* 578 F.Supp. 365 (E.D.Mich. 1984), the positions taken by the *O'Brien* and *Newman* courts were expressly rejected:

> Section 1132(a)(1)(B) does not require a limited construction excluding claims involving a challenge to the plan based on the summary plan description. Any attempt to establish a right to benefits will involve a determination of the terms of the plan, which, in turn, may require a consideration of whether a summary plan description served to modify the existing plan. In this case, plaintiff will be entitled to greater benefits if this Court determines that the existing plan has been modified to provide for complete vesting of benefits after five years.

578 F.Supp. at 368. We adopt the approach enunciated in *Gors* and hold that we have jurisdiction to consider Kochendorfer's claim.

Defendant's next argument in support of its motion is that Kochendorfer erroneously premises his claim on a document—the record keeping booklet—which bears no relationship to the requirements of ERISA. Defendant recognizes that when a pension plan issues to its participants a summary plan which is inconsistent with the plan description, a participant's rights are governed by the summary plan provisions upon which he or she reasonably relied. *See McKnight v. Southern Life and*

*Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985):

> Although [the employer] submits that both the plan and summary are consistent, [it] asserts that if a conflict arose between the plan and the summary, the plan should prevail. Such an assertion defeats the purpose of the summary. It is of no effect to publish and distribute a plan summary book designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet.

Defendant asserts that the booklet upon which Kochendorfer bases his claim is not a "plan summary" and thus any variance between the terms of the booklet and the Plan description is irrelevant. Kochendorfer, of course, asserts that the booklet *is* a summary plan description and that its terms govern his entitlement to profit sharing benefits.

Neither ERISA nor any case cited by the parties or discovered by this court explicitly defines the term "summary plan description." ERISA requires that the administrator of each employee benefit plan furnish to each participant a summary plan description. 29 U.S.C. § 1021(a)(1). The style and contents of the summary plan description which must be furnished to participants is outlined in section 1022:

> The summary plan description shall include the information described in [section 1022(b)], shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a)(1).

■ Section 1022(b) provides as follows:

> (b) The plan description and summary plan description shall contain the following information: The name and type of administration of the plan; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title).*

We do not believe that Congress intended to exclude from the term "summary plan description" every document which lacks some of the information required in section 1022(b). Rather, any document a plan distributes to its participants which contains all or substantially all of the information the average participant would deem crucial to a knowledgeable understanding of his benefits under the plan shall be deemed a summary plan description.

■ The crucial information which any document must contain before it could be

---

* It is undisputed that a summary description of the Plan which conformed to the requirements of ERISA existed. In his deposition, Kochendorfer stated that he did not receive a copy of the conforming summary plan description and did not see a copy of it until after he was discharged and this litigation commenced. Defendant submits the affidavit of James R. Beirnes, the Plan Administrator, which avers that the Plan's conforming summary plan description was disseminated to employees pursuant to the requirements of ERISA. Thus, a genuine issue of fact exists which cannot be resolved at the summary judgment stage.

deemed a summary plan description includes an explanation of the benefits and the circumstances which may disqualify a participant from securing benefits. S.Rep. 127, 93rd Cong., 2d Sess. *reprinted in* 1974 U.S. Code Cong. & Admin. News 4639, 4838, 4864. We find that the record keeping booklet given to Kochendorfer by the Plan is a summary plan description, albeit an abridged one. It purports to describe, in a manner calculated to be understood by the average plan participant, the purposes of the profit sharing plan, the source and amounts of money contributed to the Plan, the method by which each participant's share is determined, when and how a participant receives payments from the fund, how the funds are invested, and the expected future of the Plan. Nowhere does the booklet indicate that it is not a summary plan description, or state that another document will govern if inconsistencies exist.

◼ Defendant argues that the existence of the conforming summary plan description prevents this court from holding the record keeping booklet also a summary plan description. We disagree. There is nothing in the language of ERISA or in the legislative history which indicates that Congress intended to limit to one the number of summary plan descriptions a benefit plan may issue. If a participant receives inconsistent summary plan descriptions, then the question arises, upon which, if any, of the summary plan descriptions may the participant rely? We believe that when a participant receives both a conforming summary plan description and an abridged summary plan description, the participant may reasonably rely only upon the former—the conforming summary. Of course, if the participant receives only an abridged summary plan description, then he may rely on it. Since we are not faced with the issue, we do not decide what the appropriate result should be if a participant receives two conforming or two abridged summary plan descriptions which conflict. In the present case, we cannot determine as a matter of law whether Kochendorfer received the conforming summary plan description so we cannot decide on summary

judgment whether he could rely on the record keeping booklet. Therefore, we reject Defendant's argument that the record keeping booklet is, as a matter of law, an irrelevant document.

◼ The next basis on which the Plan seeks summary judgment is that Kochendorfer has not alleged or presented evidence to show that he substantially relied on the terms of the record keeping booklet, or that he suffered any prejudice from its inaccuracy. To secure relief in a claim based on a faulty summary plan description, Kochendorfer must show some significant reliance upon, or possible prejudice from, the faulty summary plan description. *Govoni v. Bricklayers, Masons & Plasterers Union Pension Fund,* 732 F.2d 250, 252 (1st Cir.1984); *Freund v. Gerson,* 610 F.Supp. 69, 71 (S.D.Fla.1985).

Defendant argues that since Kochendorfer was involuntarily dismissed, he could not have relied on the terms in the record keeping booklet in deciding whether to leave Rockdale. Moreover, since Kochendorfer had not seen the booklet before he was hired, he could not have relied on it in deciding to enter Rockdale's employ. However, Kochendorfer does not claim he relied on the booklet in deciding whether or not to join or leave Rockdale. He claims that the terms of the profit sharing plan, as stated in the booklet, were a substantial factor in his decision to continue his employment with Rockdale or not.

◼ We believe Kochendorfer's explanation is plausible, and he is entitled to prove it at a trial on the merits. An employee could reasonably base his decision to continue working at Rockdale in part because he knows that if he is laid off, or otherwise dismissed for a reason other than cause, he will get the entire amount in his profit sharing account. Thus, Kochendorfer could have stayed with Rockdale because he believed he would receive the full amount in his profit sharing account unless he quit or was fired for cause.

Whether Kochendorfer in fact relied on the terms stated in the booklet in deciding

to continue his employment is of course a question for a jury. We cannot award the Plan summary judgment on the basis of Kochendorfer's alleged lack of reliance.

■ The Plan's final argument is that the decision of the Plan's trustees to deny Kochendorfer full benefits was not arbitrary and capricious, so their judgment is entitled to deference. However, a decision of the trustees which is contrary to the plain words of the controlling document is arbitrary and capricious. *See Morgan v. Mullins,* 643 F.2d 1320 (8th Cir.1981). If the booklet is deemed applicable, then the trustees would have denied Kochendorfer benefits to which he clearly would be entitled. Such a denial would be arbitrary and capricious.

Accordingly, Defendant's motion to dismiss is treated as a motion for summary judgment and is denied.